# EXHIBIT C

{5779118:2}

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| QSL of Medina, Inc., *et. al.*,[1] ) | |
| ) | Case No. 15-52722 |
| Debtors. ) | (Request for Joint Administration |
| ) | Pending) |
| ) | |
| ) | Hon. Judge Alan M. Koschik |
| ) | |

## BIDDING PROCEDURES

These sale and bidding procedures (the "***Bidding Procedures***") govern the procedures for the sale of substantially all of the assets (collectively, the "***Assets***") of Lube Holdings, Inc. and certain of its subsidiaries (collectively, the "***Debtors***") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***").

By motion (the "***Procedures Motion***")[2] dated November 16, 2015 [Docket No. ___], the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") sought, among other things, approval of the Bidding Procedures governing the process and procedures for the sale of the Assets. On December ___, 2015, the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division (the "***Bankruptcy Court***"), entered an order approving these Bidding Procedures (the "***Bidding Procedures Order***" [Docket No. ___]). Pursuant to the Bidding Procedures Order, the Bankruptcy Court has scheduled a hearing on **February 11, 2016, at ___:___ __.m. (prevailing Eastern Time),** to consider the sale (the "***Sale Hearing***").

---

[1] The Debtors and the last four digits of the Debtors' United States Tax Identification Number following in parentheses are: QSL of Medina, Inc. (8260); QSL Operations, Inc. (2667); QSL Management, Inc. (1988); Quaker Steak & Lube Franchising Corporation (1589); Quaker Steak & Wings, Inc. (7669); QSL Sauces, Inc. (8951); QSL Intellectual Properties Corporation (9985); QSL of Buffalo, Inc. (6439); QSL of Sheffield, Inc. (5326); QSL of Plano, Inc. (6701); QSL of Warren, Inc. (3865); QSL of Independence, Ohio, Inc. (0166); QSL of Newport News, Inc. (3858); QSL of Lakewood, Inc. (1575); QSL of Harrisonburg, Inc. (4832); QSL of Concord, Inc. (9262); QSL of Carrollton, Inc. (7632); QSL of Fort Wayne, Inc. (3079); Lube Holdings, Inc. (6457); Best Wings USA, Inc. (1339); QSL of Wheeling, Inc. (2220); QSL of Vermillion, Inc. (5207); QSL of Springfield, Inc. (9745); QSL of Springfield Realty, Inc. (9589); QSL of Fredericksburg, Inc. (4887); QSL of Medina Reality, Inc. (8418); and Lube Aggregator Inc. (1263).
[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Procedures Motion.

I.     **Assets to Be Sold**

The Debtors intend to sell the Assets, which include but are not limited to the Quaker Steak & Lube® brand, corporate-owned restaurants, franchisor operations and related assets, as described more fully in the Stalking Horse APA (as defined below). Any Potential Bidder (as defined below) may obtain a detailed description of the Assets through the process described in Section II below. The Form APA includes the terms and conditions upon which the Debtors expect the Assets to be sold. Pursuant to section 363 of the Bankruptcy Code and in accordance with these Bidding Procedures, the Assets will be sold free and clear of all liens, claims, encumbrances, and interests. The Assets will be sold on an "As Is, Where Is" basis and will be sold "Without Faults."

II.    **Due Diligence**

Until the Bid Deadline (as defined below), the Debtors will afford to each interested party: (i) determined by the Debtors to be reasonably likely, to make a Qualified Bid (defined below); and (ii) who delivers an executed confidentiality agreement in form and substance satisfactory to the Debtors (each, a "***Potential Bidder***"), reasonable access, during normal business hours and subject to confidentiality requirements, to the books and records of the Debtors reasonably requested by any Potential Bidder, to the extent provision of such access or information is not prohibited by applicable law and relates to the Assets. The Debtors will simultaneously distribute via its virtual data room in written form any additional diligence materials not previously provided to the Stalking Horse Bidder or any other Potential Bidder. Except as provided by applicable law or Bankruptcy Court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements of these Bidding Procedures.

III.   **Determination of "Qualified Bidder" Status**

Any Potential Bidder desiring to participate in the bidding process must be deemed a "***Qualified Bidder***". To be deemed a Qualified Bidder, a Potential Bidder must deliver to the Debtors' investment banker (c/o Robert Hersch, Mastodon Ventures, Inc., investment banker for the Debtors, 515 Congress Ave., Suite 1400, Austin, TX 78701, rhersch@mastodonventures.com) financial information evidencing the Potential Bidder's ability to close the transaction satisfactory to the Debtors, in their sole discretion after consultation with the Official Committee of Unsecured Creditors (the "***Committee***"), or such other information as reasonably determined by the Debtors to support the Potential Bidder's ability to close the transaction.

IV.    **Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver written and electronic copies of such bid to the Debtors' investment banker (c/o Robert Hersch, Mastodon Ventures, Inc., investment banker for the Debtors, 515 Congress Ave., Suite 1400, Austin, TX 78701, rhersch@mastodonventures.com) so as to be received by no later

than **5:00 p.m. (prevailing Eastern Time) on or before February 4, 2015** (the "***Bid Deadline***").

V.     **Requirements of a "Qualified Bid"**

To be deemed a "***Qualified Bid***" that may be considered at the Auction (as defined below), a bid must:

   a.   be in writing;

   b.   be submitted by a Qualified Bidder;

   c.   provide that the purchase price shall be paid in full in cash upon closing;

   d.   provide for (i) a minimum cash purchase price that exceeds the Stalking Horse Purchase Price by at least (x) the Breakup Fee plus (y) the maximum Expense Reimbursement (as provided in the Stalking Horse APA), plus (z) $250,000 (such sum, the "***Minimum Cash Overbid Amount***") and (ii) the assumption or otherwise equivalent value of at least the Assumed Liabilities set forth in the Stalking Horse Purchase APA;

   e.   be accompanied by a cash deposit of 10% of the Minimum Cash Overbid Amount (such cash deposit will be applied to the ultimate purchase price);

   f.   confirm the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the proposed transaction;

   g.   be irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtors not to be a Qualified Bid, or (ii) another Qualified Bidder's bid for substantially all of the Assets being approved by the Bankruptcy Court;

   h.   be accompanied by a fully executed asset purchase agreement (the "***Modified APA***") and a version electronically marked to show reasonable changes against the Stalking Horse APA;

   i.   be, in the Debtors' reasonable business judgment, on substantially the same or better terms as the Stalking Horse APA;

   j.   identify all executory contracts or unexpired leases the Qualified Bidder seeks to have assigned to it;

   k.   demonstrate the capacity to provide adequate assurance of future performance under all executory contracts and unexpired leases that are being assumed and assigned;

   l.   contain no contingencies of any kind, including evidence that the Qualified Bidder has financial resources readily available sufficient to

> finance the purchase of the Assets and authorization and approval from such Qualified Bidder's board of directors or comparable governing body demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms provided in the Form APA;

m. provide the that the Qualified Bidder is obligated to perform as the Reserve Bidder (as defined below) in the event the Qualified Bidder is not the Successful Bidder; and

n. be accompanied by an affirmative statement from Qualified Bidder that (i) it has and will continue to comply with these Bidding Procedures; (ii) that its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

The Debtors, after consultation with the Committee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify all Qualified Bidders whether their bids have been determined to be Qualified Bids by no later than **5:00 p.m. (prevailing Eastern Time) on February 5, 2016**. The Debtors, after consultation with the Committee, reserve the right to reject any bid on any grounds.

## VI. Stalking Horse Bidder

The Debtors have completed arm's length negotiations with **TravelCenters of America LLC** (the "***Stalking Horse Bidder***") to serve as the stalking horse bidder. As a result of those negotiations, the Stalking Horse Bidder has submitted an initial bid of $25,000,000 for the Assets plus the assumption of certain liabilities (the "***Stalking Horse Bid***"). The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by and between the Sellers and the Stalking Horse Bidder dated November 16, 2015 (the "***Stalking Horse APA***"), shall be subject to higher and better bids pursuant to the terms of these Bidding Procedures and applicable law. For purposes of these Bidding Procedures and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

## VII. Negotiation of Stalking Horse Breakup Fee

The Debtors have negotiated, and the Bankruptcy Court has approved, a reasonable breakup fee payable to the Stalking Horse Bidder in the event that the Stalking Horse Bidder is not the Successful Bidder (defined below). The breakup fee will be equal to $750,000 (the "***Breakup Fee***"). The Debtors have also agreed, and the Bankruptcy Court has approved, the reimbursement of the Stalking Horse Bidder for its out-of-pocket expenses (including reasonable attorney's fees) incurred in connection with the transactions contemplated by the Stalking Horse APA up to a cap of $500,000 (the "***Expense Reimbursement***"). The Breakup Fee and Expense Reimbursement constitute administrative expenses under section 503(b) of the Bankruptcy Code.

## VIII. Auction Process

In the event that the Debtors receive more than one Qualified Bid, the Debtors will conduct an auction (the "*Auction*") for the Assets. The Auction will take place on **February 9, 2016 at __:__ __.m. (prevailing Eastern Time)** at the offices of Debtors' counsel: McDonald Hopkins LLC, 600 Superior Avenue, East, Ste. 2100, Cleveland, OH 44114.

The Debtors will have the right to enact detailed procedures for the conduct of the Auction at any time prior to the start of the Auction. Any rules developed by the Debtors will provide that all bids in the Auction will be made and received in one room, on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any Subsequent Overbid (as defined below) made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction. All bids shall be placed on the record, which shall either be transcribed or videotaped.

Parties entitled to attend the Auction shall include the Debtors, the Stalking Horse Bidder, the Committee, the Qualified Bidders, the Debtors' prepetition secured lenders possessing liens in the Assets, and each of those respective parties' representatives. The Stalking Horse Bidder and each Qualified Bidder shall appear at the Auction in person, or through a representative who provides appropriate evidence of such person's authority. Only a Qualified Bidder hat submitted a timely Qualified Bid and the Stalking Horse Bidder shall be entitled to make bids at the Auction.

Prior to the Auction, the Debtors will share with all Qualified Bidders the highest and best bid received at the Bid Deadline (the "*Baseline Bid*"). Qualified Bidders will be permitted to revise, increase, and/or enhance their bid based upon the terms of the Stalking Horse Bid at the Auction. All Qualified Bidders will have the right to make additional modifications to the Modified APA or the Stalking Horse APA, as the case may be, at the Auction.

The Auction will be conducted in rounds and in any order the Debtors determine. At the end of every round, the Debtors shall declare the highest and best bid or bids at that time for the Assets. Each Qualified Bidder shall have the right to continue to improve its respective bid at the Auction. The initial minimum overbid shall be the Baseline Bid plus $250,000 (the "*Initial Overbid*"). Thereafter, a Qualified Bidder may increase its Qualified Bid in any manner that it deems fit; provided, however, that each subsequent bid above the Initial Overbid (each, a "*Subsequent Overbid*") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $250,000 of additional consideration.

After an Initial Overbid is received, the Stalking Horse Bidder shall be permitted to credit bid the entire amount of the Breakup Fee and Expense Reimbursement in any subsequent bid submitted by the Stalking Horse Bidder. The Debtors shall reduce the bid

of every Qualified Bidder other than the Stalking Horse Bidder by an amount equal to the amount of the Breakup Fee plus the maximum Expense Reimbursement (or consider any Subsequent Overbid of the Stalking Horse Bidder to be higher by an amount equal to the Breakup Fee plus the maximum Expense Reimbursement). The Stalking Horse Bidder shall be entitled to make a revised higher or better offer at any time during the Auction.

The Initial Overbid and Subsequent Overbids must continue to meet each of the criteria of a Qualified Bid (other than the requirement that such bids be submitted by the Bid Deadline), including, without limitation, a purchase price that includes the Minimum Cash Overbid Amount. The Debtors reserve the right to approach any Qualified Bidder and seek clarification to bids at any time.

The Auction will continue until the Debtors (after consultation with the Committee) determine, subject to Bankruptcy Court approval, that they have received the highest and best offer for Assets (the "*Successful Bid*") and the next highest and best Qualified Bid for the Assets as the Auction (the "*Reserved Bid*"). The Qualified Bidder submitting the Successful Bid shall become the **"Successful Bidder"** and the Qualified Bidder submitting the Reserve Bid shall be the "*Reserve Bidder*."

The Debtors reserves the right, in their business judgment and after consultation with the Committee, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtors, on the one hand, and individual Qualified Bidders, on the other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require.

## IX.     The Sale Hearing

At the Sale Hearing, the Debtors will seek entry of an order authorizing and approving the sale to the Successful Bidder. No later than **11:59 p.m. (prevailing Eastern Time) on February 10, 2016**, all objections to the relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the motion to approve the sale of the Assets. The Sale Hearing may be adjourned or rescheduled from time to time. The Debtors shall provide notice of such adjournment or rescheduling to the following parties or their counsel:  (i) the U.S. Trustee; (ii) the Stalking Horse Bidder; (iii) the Committee; (iv) Qualified Bidders; (v) all parties that have filed a timely objection to the sale; (vi) all persons or entities known or reasonably believed to have asserted a lien in any of the Assets; and (vii) all parties that have requested notice in the Debtors' bankruptcy cases.

## X.     Failure to Consummate Purchase

Following the Sale Hearing, if the Successful Bidder fails to consummate the closing of the sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will be authorized, but not required, to consummate the sale with Reserve Bidder without further order of the Bankruptcy Court. In such case,

the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. Additionally, the Debtors shall be entitled to seek all available damages from the defaulting Successful Bidder.

**XI.     Return of Deposit**

The deposits of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon closing of the transactions contemplated thereby. If a Successful Bidder fails to close the transactions contemplated by the Successful Bidder then such Successful Bidder shall forfeit its deposit.

The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon the later of (i) the closing of the transaction to the Successful Bidder and (ii) thirty days after the Sale Hearing; *provided*, *however*, that if a Successful Bidder fails to close the transactions when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon closing of the transactions contemplated thereby. If a Reserve Bidder fails to close the transactions contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

All other deposits of Qualified Bidders who are not the Successful Bidder or the Reserve Bidder shall be returned within three business days after the conclusion of the Auction. The Debtors reserve all of their rights regarding any return of deposits, and the failure by the Debtors to timely return any deposits shall not serve as a claim for breach of any Qualified Bids or create any default in favor of any Qualified Bidders.

**XII.    Modification of Bidding Procedures**

The Debtors may amend any non-material terms of these Bidding Procedures, in their reasonable business judgment and after consultation with the Committee, at any time in any manner that will best promote the goals of the bidding process, including but not limited to extending or modifying any of the dates described herein.

**XIII.   Miscellaneous**

Nothing in these Bidding Procedures shall prejudice a party's rights pursuant to section 363(k) of the Bankruptcy Code to credit bid at the Auction; *provided*, *however*, that any party exercising credit bid rights must comply with all other provisions of these Bidding Procedures, including but not limited to the requirements for submitting a Qualified Bid.