UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
(AKRON)

| | |
|---|---|
| IN RE: | Chapter 11 |
| QSL OF MEDINA, INC. | Case Nos. 15-52722; 15-52726 through 15-52732; 15-52734 through 15-52735; 15-52737 through 15-52738; 15-52740 through 15-52749; 15-52751 through 15-52754 |
| Debtor | (Joint Administration under Case No. 15-52722) |
| | JUDGE ALAN M. KOSCHIK |

\* \* \* \*

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ENTRY OF FINAL ORDER TO DEBTORS' MOTION FOR ORDERS: (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SETTING FINAL HEARING; AND (V) <u>GRANTING RELATED RELIEF [DOCKET NO. 7]</u>**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its proposed undersigned counsel[1], hereby objects to the entry of a final order approving the

---

[1] On December 11, 2015, the Committee filed its *Application of Official Committee of Unsecured Creditors for QSL of Medina, Inc., et al. for Authority to Retain and Employ Counsel for the Committee, Nunc Pro Tunc to December 8, 2015* [Docket No. 94].

20801-301\1343970.docx

Motion[2] filed by Debtors, as each is identified in footnote 1 herein (the "Debtors"). In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Debtors commenced their respective chapter 11 in order to sell substantially all of their assets. This objective is clearly evidenced by the Debtors' filing, on the first day, of the *Motion for an Order: (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors Assets; (B) Authorizing and Scheduling an Auction; (C) Scheduling Hearing for Approval Of The Sale Of Assets Free and Clear of Liens and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; (D) Approving Breakup Fee and Expense Reimbursement; (E) Approving Procedures and Setting Deadlines for the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines and the Form, Manner and Sufficiency of Notice; and (G) Granting Other Related Relief* (the "Sale Procedures Motion") [Docket No. 9]. TravelCenters of America, LLC ("TCA") is not only identified as the Stalking Horse Bidder[3], but also the provider of the proposed postpetition financing for which the Debtors' seek this Court's approval.

2. The Committee's general position is that it does not object to the proposed postpetition financing and sale of the Debtors' assets[4]; rather, the Committee objects to certain aspects of the financing, including the provision of certain protections and other terms, as more fully addressed below. It should be noted that the Committee has participated in discussions

---

[2] "Motion" refers to *Debtors' Motion for Interim and Final Orders: (I) Authorizing Debtors to Obtain Secured Post-Petition Financing and Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting Final Hearing; and (V) Granting Related Relief* [Docket No. 7].

[3] See, *Asset Purchase Agreement*, Exhibit B to the Sale Procedures Motion.

[4] The Committee will be filing a separate, limited objection to the Sale Procedures Motion to address its concerns with the sale and bidding procedures.

with counsel for the Debtors and counsel for TCA in an attempt to resolve the Committee's concerns. Although the Committee believes that certain, if not all, of the concerns will be resolved and/or addressed in the Final Financing Order, the Committee files this Objection out of an abundance of caution and to reserve all of its rights.

**BACKGROUND**

3. On November 16, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their business, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157. Consideration of the Motion and this Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtors' chapter 11 cases, the Motion and this Objection is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. On November 17, 2015, the Court conducted a hearing on the Motion (the "Initial Financing Hearing"), following which, on November 18, 2015, the Court entered the *Interim Order: (I) Authorizing Debtors to Obtain Secured Post-Petition Financing and Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting Final Hearing; and (V) Granting Related Relief* (the "Interim Financing Order") [Docket No. 32]. This Court's docket indicates that a final hearing on the Motion is scheduled for December 15, 2015 at 2:00 p.m. (the "Final Financing Hearing"). The Debtors, through counsel, have granted the Committee an extension until Friday, December 11, 2015 at 12:00 p.m. to object to the Motion. The Committee and the Debtors have begun discussions on the issues presented in this Limited Objection and progress has been made. In areas where the Committee believes resolution has likely been reached, the Committee has noted as such.

6. On December 4, 2015, the United States Trustee, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee. The members of the Committee include: (i) Campana Properties, Inc.; (ii) University Quaker Steak & Lube, LLC; and (iii) Sandusky Bay Co., Ltd. As the Committee was appointed subsequent to the November 17, 2015, the Committee was not able to attend the Initial Financing Hearing.

## LIMITED OBJECTION

7. The Committee objects to the entry of a final order approving the postpetition financing for the reasons set forth below:

*(A)    The Proposed Committee Professional Carve-Out is Insufficient*

8. There is a limited carve-out in the Debtors' Budget for Committee professionals. The carve-out, which is in the aggregate for all Committee professionals, is currently proposed at $155,000.00 (the "Committee Carve-Out"). While this amount is not insignificant, it is not representative of the scope of work that will be required by the Committee and its professionals.

9. By virtue of Bankruptcy Code Section 1103(c), the Committee owes a fiduciary duty to its entire creditor constituency. *See Walsh v. Westmoreland Human Opportunities, Inc. (In re Life Servs., Inc.)*, 279 B.R. 504, 510 (Bankr. W.D. Pa. 2002) (stating "[b]y implication, §1103(c) imposes on members of a committee...a fiduciary duty towards the committee's constituents") (citing *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)). The Committee's "primary purpose...is to represent the interests of all general unsecured creditors and to maximize distribution to them." *Id.* (citing *In re Nationwide Sports Dist., Inc.*, 227 B.R. 445, 463 (Bankr. E.D. Pa. 1998)). In fulfilling its purpose, the Committee "not only has, with the [C]ourt's approval, the power to employ attorneys, accountants, and other agents to represent or perform services for the [C]ommittee, it has the duty to determine what assistance it requires in order to perform its duties, when such assistance is required, and to select those best qualified

to render such assistance." *Advisory Comm. of Major Funding Corp. v. Sommers (In re Advisory Comm. of Major Corp.)*, 109 F.3d 219, 224 (5th Cir. 1997) (quoting Irving Sulvmeyer, *For Creditors' Committees* (Lawrence P. King, ed., Matthew Bender 1996)). Thus, courts have long recognized the importance of carve-outs for the retention and payment of committee professionals. *See, e.g., In re Ames Dept. Stores, Inc., et al.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating "[i]ndeed, it has been the uniform practice in this court...to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount to provide for payment for the fees of debtor's and the committee's counsel and possibly trustee's counsel in order to preserve the adversary system") (internal citations omitted).

10. As is inarguably apparent from the *Affidavit and Statement of Gregory R. Lippert in Support of Chapter 11 Petitions and First Day Pleadings* (the "Lippert Affidavit") [Docket No. 6], the Debtors' business, and specifically their financing structure, is extremely complicated. The secured lending relationships are many, with the multiple "lenders," both traditional and non-traditional, possessing alleged security interests in nearly the entirety of the Debtors' assets. As the alleged secured positions of the lenders place them in asserted priority to the unsecured creditor constituency, it is imperative that the Committee and its professionals conduct a thorough lien investigation. Given the structure of the Debtors' financing, it is entirely possible, and quite likely, that a material amount of the Committee's professionals' time expended in the foreseeable future will involve this investigation.[5]

11. Furthermore, and as demonstrated by the Committee's *Application to Employ BDO, USA LLP as Financial Advisors to the Committee* (the "BDO Application"), filed

---

[5] Additionally, as currently presented, the Committee Carve-Out is not entirely clear with respect to the use of the Committee Carve-Out for such investigation. Any final order should be clear that the Committee may review, investigate and evaluate the alleged claims of the lenders and be paid for such work from the Committee Carve-Out and, further, that any fees and expenses incurred by the Committee with respect to challenges to the lender claims be paid from the Committee Carve-Out.

20801-301\1343970.docx                                    5

15-52722-amk    Doc 97    FILED 12/11/15    ENTERED 12/11/15 12:05:00    Page 5 of 10

concurrently with this Limited Objection, the Committee believes that it is imperative to employ its own financial advisor to oversee, among other things, the sale and bidding process and, ultimately, the purchase of the Debtors' assets by TCA or another third-party. The Lippert Affidavit provides an explanation of the prior actions taken by the Debtors, with the assistance of Mastadon Ventures, Inc. ("Mastadon"), retained by the Debtors as an investment banker, in an attempt to structure a financial and operational restructuring. Ultimately, the pre-filing attempts by the Debtors and Mastadon did not conclude in a result that was acceptable to the Debtors and their lenders – thus leading to the Debtors' chapter 11 filings. While the Committee has no reason to believe that Mastadon did not perform, and produce, pre-filing to the best of their ability, the Debtors' chapter 11 filings change the landscape. BDO, with its extensive restaurant experience, brings to the table, for the Committee and, for that matter, the Debtors, fresh eyes and, potentially, access to untapped resources to achieve what the Debtors seek – the sale of substantially all of their assets for the highest and best price.

12. Combining the work, and value, that the Committee believes BDO will bring to these chapter 11 cases with the legal representation required by the Committee, the Committee Carve-Out, which, again, is in the aggregate for *all* Committee professionals, is simply inadequate. The Committee submits that the expanding the Committee Carve-Out to $250,000.00 is fair and reasonable.

*(B)    The Committee Requests Clarification on Unencumbered Assets and the Proposed Collateral of TCA; Limitation of Liens on Avoidance Actions*

13. The Debtors, though alleging that their lenders' security interests reach nearly all assets, make reference to certain unencumbered assets that TCA, by virtue of the protections proposed, will enjoy fully-protected first priority senior security interests thereupon. Such protections, particularly with respect to unencumbered assets, are not controversial with respect to debtor-in-possession financing. The Committee does not object, per se, to such protections

but, rather, to the lack of clarity on the composition of the unencumbered assets and, particularly, the value ascribed to them by the Debtors. The Committee respectfully requests that this issue be clarified. The Committee and the Debtors have discussed this issue and significant clarity has been provided. Committee's counsel has yet to share the updated data with the Committee at the time of filing of this Limited Objection, and accordingly, follow up inquiry may result.

14. Furthermore, and naturally dovetailing with the Committee's immediately preceding concern, is the Committee's request for clarification of what, in reality, is included in the proposed collateral of TCA as the provider of debtor-in-possession financing. Although it is not necessarily uncommon, the number of lenders to which the Debtors are indebted, and the vast array of assets securing such indebtedness, lends itself to some confusion as to that collateral is pledged to TCA. The Committee simply seeks some clarification from the Debtors and, to the extent required, TCA. The Committee and the Debtors have discussed this issue and significant clarity has been provided. Committee's counsel has yet to share the updated data with the Committee at the time of filing of this Limited Objection, and accordingly, follow up inquiry may result

15. The proposed financing terms, for purposes of the Interim Financing Order, specifically excluded from TCA's Post-Petition Collateral (as such term is defined in the Motion) avoidance actions and the proceeds of avoidance actions. However, a caveat exists that TCA may request, in the Final Financing Order, that such actions, and the proceeds thereof, be included in the TCA's Post-Petition Collateral, resulting in a superpriority claim. It is the Committee's position that avoidance actions, if any, and the proceeds thereof, are properly assets of the Debtors' estates that exist for the benefit of the Committee's constituency. As such, the Committee requests that any Final Financing Order retain language that specifically excludes avoidance actions, and the proceeds thereof, from TCA's Post-Petition Collateral.

20801-301\1343970.docx 7

15-52722-amk    Doc 97    FILED 12/11/15    ENTERED 12/11/15 12:05:00    Page 7 of 10

### (C) Extension of the Committee's Challenge Period

16. As currently presented, the Challenge Period (as defined in the Interim Financing Order) is limited to sixty (60) days, beginning upon the entry of the Interim Financing Order (November 18, 2015). As such, the Challenge Period Termination Date (as defined in the Interim Financing Order) is January 17, 2016. This timeframe is inadequate for the Committee to complete its responsibilities.

17. The Committee was appointed on December 4, 2015, or sixteen (16) days subsequent to the entry of the Interim Financing Order. Thus, on the front end, the Committee has lost over two-weeks. Furthermore, the year-end holidays are quickly approaching and, as such, time is at a premium.

18. The Committee, following discussion with the Debtors, believes resolution of this issue has been reached.

### (D) Confirmation of the Committee's Review and Consultation Rights

19. The Committee believes that the proposed debtor-in-possession financing and, presumably, the proposed Final Financing Order, will include terms allowing the Committee to review and/or consult with respect to all material matters, including any amendments to financing or the budget, and at all appropriate intervals during the pendency of the Debtors' chapter 11 cases. To confirm this presumption, the Committee simply requests that, in fact, any Final Financing Order contains such terms and provisions preserving the Committee's review rights. The Committee, following discussion with the Debtors, believes that resolution of this issue has been reached.

### (E) Waiver of Section 506(c) Surcharge

20. The Committee objects to any waiver of a section 506(c) surcharge claim against the lenders and their purported collateral. While such a claim may be unlikely, certainly given

how the Debtors' have positioned their chapter 11 cases, such "unlikehood" should not result in a complete waiver at the outset. There are many lenders in this case and the debt structure is complicated.

WHEREFORE, based on the foregoing, the Committee respectfully requests that the Court (a) enter a Final Financing Order that addresses the issues raised in this Objection, and (b) grant the Committee such other and further relief to which it is justly entitled.

Respectfully submitted,

/s/Christopher W. Peer
Christopher W. Peer (No. 0076257)
E-mail Cpeer@wickenslaw.com
John A. Polinko (No. 0073967)
E-mail JPolinko@WickensLaw.com
WICKENS, HERZER, PANZA, COOK & BATISTA CO.
35765 Chester Road
Avon, OH 44011-1262
(440) 695-8000 (Main)
(440) 695-8098 (Fax)

ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QSL OF MEDINA, INC.

**PROOF OF SERVICE**

        This is to certify that a copy of the foregoing *Limited Objection Of Official Committee Of Unsecured Creditors To Entry Of Final Order To Debtors' Motion For Orders: (I) Authorizing Debtors To Obtain Secured Post-Petition Financing And Use Cash Collateral; (Ii) Granting Adequate Protection; (Iii) Modifying The Automatic Stay; (Iv) Setting Final Hearing; And (V) Granting Related Relief [Docket No. 7]*, has been sent via the Court's electronic filing system to all parties listed on the Court's Electronic Mailing notice, on this 11th day of December, 2015, and specifically to:

Michael J. Kaczka, Esq.
mkaczka@mcdonaldhopkins.com
Scott N. Opincar, Esq.
sopincar@mcdonaldhopkins.com

                                              /s/Christopher W. Peer
                                              Christopher W. Peer
                                              John A. Polinko