**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| QSL of Medina, Inc., *et. al.*,[1] ) | |
| ) | Case Nos. 15-52722; 15-52724; 15- |
| Debtors. ) | 52726 through 15-52732; 15-52734 |
| ) | through 15-52735; 15-52737 through |
| ) | 15-52738; 15-52740 through 15-52749; |
| ) | 15-52751 through 15-52754 |
| ) | |
| ) | (Jointly Administered under Case No. |
| ) | 15-52722) |
| ) | |
| ) | Hon. Judge Alan M. Koschik |

### NOTICE OF FILING THIRD AMENDMENT TO STALKING HORSE APA

PLEASE TAKE NOTICE THAT on November 16, 2015, certain of the above-captioned debtors and debtors in possession (collectively, the "Debtors") entered into that certain Asset Purchase Agreement (the "Stalking Horse APA") with TravelCenters of America LLC ("TravelCenters").[2]

PLEASE TAKE FURTHER NOTICE THAT on December 31, 2015, the parties to the Stalking Horse APA executed two separate amendments to the Stalking Horse APA and finalized the disclosure schedules to the Stalking Horse APA (the "Amendments and Schedules").[3]

PLEASE TAKE FURTHER NOTICE THAT TravelCenters and the Debtors have executed Amendment No. 3 to Asset Purchase Agreement, a copy of which is attached hereto as Exhibit A.

---

[1] The Debtors and the last four digits of the Debtors' United States Tax Identification Number following in parentheses are: QSL of Medina, Inc. (8260); QSL Operations, Inc. (2667); QSL Management, Inc. (1988); Quaker Steak & Lube Franchising Corporation (1589); Quaker Steak & Wings, Inc. (7669); QSL Sauces, Inc. (8951); QSL Intellectual Properties Corporation (9985); QSL of Buffalo, Inc. (6439); QSL of Sheffield, Inc. (5326); QSL of Plano, Inc. (6701); QSL of Warren, Inc. (3865); QSL of Independence, Ohio, Inc. (0166); QSL of Newport News, Inc. (3858); QSL of Lakewood, Inc. (1575); QSL of Harrisonburg, Inc. (4832); QSL of Concord, Inc. (9262); QSL of Carrollton, Inc. (7632); QSL of Fort Wayne, Inc. (3079); Lube Holdings, Inc. (6457); Best Wings USA, Inc. (1339); QSL of Wheeling, Inc. (2220); QSL of Vermillion, Inc. (5207); QSL of Springfield, Inc. (9745); QSL of Springfield Realty, Inc. (9589); QSL of Fredericksburg, Inc. (4887); QSL of Medina Realty, Inc. (8418); and Lube Aggregator Inc. (1263).
[2] The Stalking Horse APA was filed with the Court under Docket No. 9.
[3] The Amendments and Schedules were filed with the Court under Docket No. 132.

{6020683:}

15-52722-amk    Doc 273    FILED 03/22/16    ENTERED 03/22/16 11:15:50    Page 1 of 15

Dated:  March 22, 2016

Respectfully submitted,

/s/Michael J. Kaczka
Scott N. Opincar (0064027)
Michael J. Kaczka (0076548)
McDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

# **EXHIBIT A**

{6020683:}

# AMENDMENT NO. 3 TO ASSET PURCHASE AGREEMENT

This AMENDMENT NO. 3 TO ASSET PURCHASE AGREEMENT (this "Amendment No. 3") is made as of March 22, 2016, by and among TravelCenters of America LLC, a Delaware limited liability company ("Buyer"), and Lube Aggregator, Inc., a Delaware corporation ("Parent"), Lube Holdings, Inc., a Delaware corporation (the "Company") and each of their respective direct or indirect subsidiaries listed on the signature page to that certain Existing Asset Purchase Agreement (as defined below) (together with Parent and the Company, each a "Seller" and collectively the "Sellers"), the Sellers under Case No. 15-52722 in the United States Bankruptcy Court for the Northern District of Ohio (Eastern Division) (the "Bankruptcy Court"). Buyer and Sellers are together referred to herein as the "Parties" and each a "Party". Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (as defined below), unless otherwise defined herein.

**W I T N E S S E T H:**

WHEREAS the Parties entered into that certain Asset Purchase Agreement, dated as of November 16, 2015, as amended by that certain Amendment No. 1 to Asset Purchase Agreement dated as of December 15, 2015 and that certain Amendment No. 2 to Asset Purchase Agreement dated December 30, 2015 (the "Existing Asset Purchase Agreement"); and

WHEREAS Section 12.4 of the Existing Asset Purchase Agreement authorizes the amendment of the Existing Asset Purchase Agreement by a written instrument signed by the Parties; and

WHEREAS the Parties desire to amend the Existing Asset Purchase Agreement as provided herein (the Existing Asset Purchase Agreement, as so amended and as may be further amended, restated or otherwise modified, the "Asset Purchase Agreement"); and

WHEREAS nothing contained in this Amendment No. 3, nor any action taken by Sellers in connection with this Amendment No. 3, constitutes an admission of wrongdoing or liability on the part of Sellers.

**Bosselman Contract and Reduction to Base Purchase Price**

WHEREAS Bosselman Food Services, Inc. ("Bosselman") has filed with the Bankruptcy Court an Objection and Supplement to Objection of Bosselman Food Services, Inc. to Debtors' Motion for an Order Approving a Sale of Debtors' Assets, Including Debtors' Intent to Assume and Assign Certain Executory Contracts and Leases and Cure Costs Thereto, and Debtors' Notice to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned, Docket Nos. 220 and 247 (the "Objection"); and

WHEREAS pursuant to the Objection, Bosselman is claiming, among other things, that the Bosselman Franchise Agreement (defined below), is not an executory contract that can be assumed and assigned to Buyer; and

WHEREAS pursuant to Section 9.1(f) of the Existing Asset Purchase Agreement, it is a condition to Closing that the Purchased Assets be assumed, assigned and sold to Buyer, and such Purchased Assets include the delivery of the Bosselman Franchise Agreement; and

WHEREAS in order to facilitate the acquisition of the other Purchased Assets, Buyer is willing to waive the closing condition of the delivery of the Bosselman Franchise Agreement in exchange for a reduction in the Base Purchase Price as set forth herein; and

**Assignment and Assumption of certain Purchased Contracts**

WHEREAS as of the Closing, the Contracts listed on Schedule 1 to this Amendment No. 3 (the "Specified Contracts") and that are subject to the stipulations described on Schedule 1 to this Amendment No. 3 (the "Specified Stipulations") have unresolved Cure Amounts that may not be approved by the Bankruptcy Court as of the anticipated Closing Date; and

WHEREAS in order to facilitate the timely Closing of the Asset Purchase Agreement, the Parties hereto desire to amend the Asset Purchase Agreement as set forth herein to allow for the assignment and assumption of the Specified Contracts to Buyer at Closing and the payment of the Cure Amounts by Sellers.

**Extension of the Cranberry Franchise Agreement and Erie Franchise Agreement**

WHEREAS the Cranberry Franchise Agreement (defined below) and Erie Franchise Agreement (defined below) listed on Schedule 5.15 to the Existing Asset Purchase Agreement have expired on their terms; and

WHEREAS pursuant to Section 9.1(f), it is a condition to Closing that the Purchased Assets be assumed, assigned and sold to Buyer, and such Purchased Assets include the delivery of the Cranberry Franchise Agreement and Erie Franchise Agreement; and

WHEREAS in order to cure Sellers' inability to assume and assign the Cranberry Franchise Agreement and Erie Franchise Agreement, Buyer will agree to Sellers' delivery of the reinstatements of the Cranberry Franchise Agreement and Erie Franchise Agreement as set forth herein, which deliveries will be considered a condition to Closing under Section 9.1 of the Existing Purchase Agreement.

**Closure of the Pleasant Hills Franchise Location**

WHEREAS, after the date of the Existing Asset Purchase Agreement, the Pleasant Hills Franchise Agreement (defined below) was terminated and the corresponding franchise location was closed; and

WHEREAS pursuant to Section 9.1(f), it is a condition to Closing that the Purchased Assets be assumed, assigned and sold to Buyer, and such Purchased Assets include the delivery of the Pleasant Hills Franchise Agreement; and

WHEREAS in consideration of the other agreements contained in this Amendment No. 3, Buyer is willing to waive the Closing condition of Sellers assuming and assigning to Buyer the Pleasant Hills Franchise Agreement and delivering to Buyer the corresponding franchise location at 511 Clairton Blvd., Pleasant Hills, PA.

**Management Agreement Pending Liquor License Approvals**

WHEREAS Buyer and Sellers desire that the Closing Date occur prior to Buyer obtaining the Liquor License Approvals; and

WHEREAS, state liquor Laws relating to the locations at (i) 101 Chestnut Ave., Sharon, PA and (ii) 45 Satterfield Drive, Triadelphia, WV (the "Specified Locations") also require that certain assets not be transferred to Buyer until Buyer obtains the appropriate Liquor License Approvals; and

WHEREAS to achieve a timely Closing prior to obtaining the Liquor License Approvals, the Parties desire to enter into a management agreement as provided in Section 2.6(c)(viii) of the Existing Asset Purchase Agreement, and desire to amend the Existing Asset Purchase Agreement in connection therewith as set forth in this Amendment No. 3.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows, notwithstanding anything in the Existing Asset Purchase Agreement to the contrary:

1. For purposes of this Amendment No. 3, the term "Bosselman Franchise Agreement" shall mean that certain Quaker Steak & Lube Restaurant Franchise Agreement dated September 12, 2014 between the Quaker Steak & Lube Franchising Corporation and Bosselman Food Services, LLC (Grand Island Location), as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated September 12, 2014.

2. The Bosselman Franchise Agreement is an Excluded Contract, and Buyer does not have the right to make the Bosselman Contract a Purchased Contract pursuant to Section 2.1of the Existing Asset Purchase Agreement.

3. The definition of "**Base Purchase Price**" in Section 1.1 of the Existing Asset Purchase Agreement is hereby amended by deleting "Twenty-Five Million Dollars ($25,000,000)" and inserting "Twenty Four Million Two Hundred Fifty Eight Thousand and Ninety Five Dollars ($24,258,095)".

4. Upon entry of the Sale Order approving the Specified Stipulations, the Specified Contracts shall be assumed and assigned to Buyer and the Cure Amounts associated therewith shall be paid by Seller as set forth in the Specified Stipulations upon approval of the amount of the Cure Amount by the Bankruptcy Court. Notwithstanding anything to the contrary, Buyer shall have no liability or obligation whatsoever in respect of the Cure Amounts associates with the Specified Contracts. For the avoidance of doubt, Buyer shall not assume or have any liability or obligation whatsoever with respect to any Liabilities which may become due or owing under

any of the Specified Contracts (i) with respect to the period prior to the Closing or (ii) after the Closing but which arise out of or relate to any breach that occurred prior to the Closing.

5. For purposes of this Amendment No. 3, the term "Cranberry Franchise Agreement" means that certain Quaker Steak & Lube Restaurant Franchise Agreement dated July 10, 1998 between the Quaker Steak and Lube Franchising Corporation and Bullivar Associates (as successor in assignment from Joll Development Company) (Cranberry Location), and the term "Erie Franchise Agreement" means that certain Quaker Steak & Lube Restaurant Franchise Agreement dated March 31, 1999 between the Quaker Steak & Lube Franchising Corporation and Peach Street Wings, Inc. (Erie Location).

6. Sections 9.1(g) and (h) of the Existing Asset Purchase Agreement are hereby renumbered as Sections 9.1(h) and (i), respectively, and the following new paragraph is inserted before them as Section 9.1(g):

"Sellers shall have entered into a reinstatement of the original terms of the Cranberry Franchise Agreement and Erie Franchise Agreement (the "Reinstated Agreements") with the operators of the Quaker Steak and Lube® restaurants located in Cranberry, PA and Erie, PA, with a remaining term on the Closing Date of not less than three full calendar years with respect to the Erie Franchise Agreement and not less 120 days with respect to the Cranberry Franchise Agreement, in each case on terms reasonably acceptable to Buyer, and such agreements shall be valid, binding and in full force and effect in accordance with their terms."

7. Upon satisfaction of the Closing condition set forth in Section 9.1(g) of the Asset Purchase Agreement, each of the Reinstated Agreements shall be deemed a Purchased Asset and a Purchased Contract, Buyer shall not have the right to make either of the Reinstated Agreements an Excluded Contract pursuant to Section 2.1 of the Existing Asset Purchase Agreement. In addition, Buyer hereby consents to the following with respect to Peach Street Wings, Inc. (the franchisee under the Erie Franchise Agreement), (i) The Accounts Receivable owed by Peach Street Wings, Inc. shall be reduced to $70,000, which will be paid in three monthly installments in the amount of $25,000, $25,000 and $20,000 and (ii) Peach Street Wings, Inc. does not have to pay any renewal fee relating to the execution of the Reinstatement Agreement.

8. Each of the Real Property Leases listed on Schedule 2 to this Amendment No. 3 shall be deemed to be a Purchased Asset, and Buyer shall not have the right to designate any such Lease Agreement as an Excluded Contract pursuant to Section 2.1 of the Existing Asset Purchase Agreement, provided that if the memorandum of leases executed by the applicable landlord and Seller reflecting Sellers' leasehold interests in any of the Leased Real Property are not filed and recorded with the appropriate Governmental Body as of at least two (2) Business Days prior to the Closing Date, Buyer shall retain the right to designate any such Real Property Lease as an Excluded Contract pursuant to Section 2.1 of the Existing Asset Purchase Agreement. Buyer shall offer employment to substantially all Restaurant Employees that are employed at the locations associated with the Real Property Leases listed on Schedule 2 to this Amendment No. 3 in accordance with the terms of Section 8.10 of the Existing Asset Purchase Agreement.

15-52722-amk    Doc 273    FILED 03/22/16    ENTERED 03/22/16 11:15:50    Page 7 of 15

9. For purposes of this Amendment No. 3, the term "Pleasant Hills Franchise Agreement" means that certain Quaker Steak & Lube Restaurant Franchise Agreement dated August 17, 2005 between the Quaker Steak & Lube Franchising Corporation and Joll Enterprises, Inc. (Pleasant Hills Location).

10. Buyer hereby waives the Closing condition of Sellers assuming and assigning the Pleasant Hills Franchise Agreement to Buyer and delivering to Buyer the franchise location at 511 Clairton Blvd., Pleasant Hills, PA, and Buyer agrees that Sellers shall have no liability under the Asset Purchase Agreement relating to its inability to assume and assign the Pleasant Hills Franchise Agreement to Buyer and deliver to Buyer the corresponding franchise location.

11. In accordance with Section 2.6(c)(viii) of the Existing Asset Purchase Agreement, the Furniture and Equipment, Permits, and Inventory located at the Specified Locations shall be considered a Designation Rights Asset. Notwithstanding anything contained in Section 2.6(c)(viii) to the contrary, the Parties agree that the management of the Furniture and Equipment, Permits, and Inventory at the Specified Locations will not be included in the Designation Rights Budget and that all costs associated with the management thereof that are incurred by Sellers shall be reimbursed by Buyer under a management agreement delivered pursuant to Section 2.6(c)(viii) of the Existing Asset Purchase Agreement on terms mutually agreed to by the Parties. The Parties further agree that the management agreement will also include management of any other locations that are a Purchased Asset pending receipt of the applicable Liquor License Approvals on terms that include Buyer's reimbursement of all costs associated with the management thereof and other terms mutually agreed to by the Parties.

12. The Parties agree to extend the timeframe for the delivery and approval of the Designation Rights Budget set forth in Section 2.6(c)(ii) to be no later than five (5) days prior to the Closing Date.

13. This Amendment No. 3 shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to the choice of law principles of that or any other jurisdiction.

14. All terms and conditions of the Existing Asset Purchase Agreement not amended by this Amendment No. 3 are hereby ratified and confirmed.

15. This Amendment No. 3 may be executed in counterparts (including by facsimile and email), each of which, when executed and delivered, shall be deemed to be an original copy of this Amendment No. 3 and all of which, when taken together, shall constitute one and the same instrument.

16. From and after the date of this Amendment No. 3, any reference to the Asset Purchase Agreement shall be deemed to mean the Asset Purchase Agreement as amended by this Amendment No. 3 and as the same may be further amended, modified or supplemented in accordance with the terms thereof.

[*Signature Pages Follow*]

15-52722-amk    Doc 273    FILED 03/22/16    ENTERED 03/22/16 11:15:50    Page 8 of 15

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Amendment No. 3 as of the date first above written.

**SELLERS:**

LUBE AGGREGATOR, INC.
LUBE HOLDINGS, INC.
QUAKER STEAK AND LUBE FRANCHISING CORPORATION
QSL INTELLECTUAL PROPERTIES CORP.
QSL SAUCES, INC.
BEST WINGS USA, INC.
QSL OF INDEPENDENCE OHIO INC.
QSL OF SHEFFIELD, INC.
QSL OF VERMILION, INC.
QSL OF WHEELING, INC.
QSL OF LAKEWOOD, INC.
QSL OF SPRINGFIELD REALTY, INC.
QSL RICHARDSON, INC.
QSL OF MEDINA, INC.
QSL OF MEDINA REALTY
QSL OF WARREN, INC.
QSL OF NEWPORT NEWS, INC.
QSL OF HARRISONBURG, INC.
QUAKER STEAK & WINGS, INC.

By: /s/ Gregory R. Lippert
Name: Gregory R. Lippert
Title: CEO

**BUYER**:                     **TRAVELCENTERS OF AMERICA LLC**

By: _____
     Name: Mark R. Young
     Title: Executive Vice President and General Counsel

# Schedule 1
**<u>Specified Contracts and Specified Stipulations</u>**

(as attached)

| # | Franchise Agreement | Stipulation |
|---|---|---|
| 1. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and QSL/Joll Johnstown LLC (Johnstown Location) dated October 22, 2012 | Stipulation resolving objection to proposed cure cost related to proposed assumption and assignment of franchise agreement. |
| 2. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and Joll Enterprises, Inc. (Pleasant Hills Location) August 17, 2005 | Stipulation resolving objection to proposed cure cost related to proposed assumption and assignment of franchise agreement. |
| 3. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and Joll Development Company, Inc. (Pittsburg International Airport Location) dated April 12, 2013 | Stipulation resolving objection to proposed cure cost related to proposed assumption and assignment of franchise agreement. |
| 4. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak and Lube Franchising Corporation and Bullivar Associates (as successor in assignment from Joll Development Company) (Cranberry Location) dated July 10, 1998 | Stipulation resolving objection to proposed cure cost related to proposed assumption and assignment of franchise agreement. |
| 5. | Quaker Steak & Lube Restaurant Franchise Agreement between Quaker Steak & Lube Franchising Corporation and QSLPA Investments of Ohio Limited (Beaver Creek Location) dated July 20, 2011, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated July 20, 2011. | Stipulation resolving objection of QSLPA investments of Ohio Limited to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 6. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak and Lube Franchising Corporation and QSL Enterprise, Ltd. | Stipulation resolving objection of QSLPA Enterprise Ltd. to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and |

|     |     |     |
| --- | --- | --- |
|     | (Bloomsburg Location) dated October 7, 2005, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated October 7, 2005. | assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 7. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak and Lube Franchising Corporation and Charleston Lube Partners, LLC (Charleston Location) dated December 31, 2012, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated December 31, 2012. | Stipulation resolving objection of Charleston Lube Partners, LLC to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 8. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak and Lube Franchising Corporation and Canton QSL, LLC (Canton Location) dated December 31, 2012, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated December 31, 2012. | Stipulation resolving objection of Canton QSL, LLC to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 9. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and QSL Restaurant Florida Limited (Pinellas Park Location) dated September 20, 2010, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated September 20, 2010. | Stipulation resolving objection of QSL Restaurants Florida Limited to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 10. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and Mentor QSL, LLC (Mentor Location) dated December 31, 2012 , as amended by that certain Addendum to Quaker Steak & Lube | Stipulation resolving objection of Mentor QSL, LLC to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |

|  | | |
|---|---|---|
|  | Restaurant Franchise Agreement dated December 31, 2012. | |
| 11. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and QSL Portage, LLC (Portage Location) dated January 31, 2007, as amended by that certain Addendum to Quaker Steak & Lube Restaurant Franchise Agreement dated January 31, 2007 and as supplemented by certain Rider attached to the Franchise Agreement dated February 1, 2007. | Stipulation resolving objection of QSL Portage, LLC to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 12. | Quaker Steak & Lube Restaurant Franchise Agreement between the Quaker Steak & Lube Franchising Corporation and K Investments Limited (Mechanicsburg Location) dated September 4, 2013. | Stipulation resolving objection of K Investments Limited to Debtors' motion for an order approving a sale of Debtors' assets, including Debtors' intent to assume and assign certain executory contracts and leases and cure costs thereto, and Debtors' notice to counterparties to executory contracts and expired leases that may be assumed and assigned. |
| 13. | Operating Agreement of QSL of Austintown Realty, LLC between Raymond D. Travaglini 1989 Revocable Trust Agreement and Lube Holdings, Inc. dated October 1, 2005.<br><br>Operating Agreement of QSL of Austintown Ohio LLC between Raymond D. Travaglini 1989 Revocable Trust Agreement and Lube Holdings, Inc. dated October 1, 2005. | Stipulation resolving objection of Travaglini Investment Group to Debtors' Sale Motion and Proposed Cure Amount |

**Schedule 2**
**Real Property Leases**

1. Lease Agreement dated March 1, 2011 between The Shops at Boardman Park Properties, LLC and Quaker Steak & Wings, Inc., as amended by that certain Amendment to Lease dated July 5, 2011. (Boardman location).

2. Lease Agreement dated July 30, 2008 between Harpoon of Newport News, VA, LLC and Virginia Lube Partners, LLC, as amended by that certain Amendment of Lease dated September 30, 2012, as assigned to QSL of Newport News, Inc. by that certain Assignment of Tenant's Interest in Lease and Assumption Agreement dated November 12, 2013, as guaranteed by Lube Holdings, Inc. by that certain Lease Guaranty with respect to the land and improvements located at 12832 Jefferson Avenue, Newport News, Virginia. (Newport News location).

3. Subordination, Non-Disturbance and Attornment Agreement dated March 31, 2014 by and among Barclays Bank PLC, New York Branch, QSL of Newport News, Inc., and 12832 Jefferson Newport News VA, LLC. (Newport News location).

4. Lease Agreement dated May 14, 2002 between Campana Development V, LLC and Campana Properties, Inc. (Sheffield location).

5. Sublease Agreement dated April 10, 2009 between Campana Properties, Inc. and QSL of Sheffield, Inc., as amended by that certain Agreement to Amend Memorandum of Agreement and Sublease dated July 25, 2012. (Sheffield location).

6. Memorandum of Agreement dated April 10, 2009 by and among Lube Holdings, LLC, QSL of Sheffield, Inc., QSL of Vermilion, Inc., Quaker Steak & Lube Franchising Corporation, Campana Development V, LLC and Campana Properties, Inc., as amended by that certain Agreement to Amend Memorandum of Agreement and Sublease dated July 25, 2012. (Sheffield location).

7. Management Agreement dated April 10, 2009 between Campana Properties, Inc. and QSL of Sheffield, Inc. (Sheffield location).

8. Purchase Agreement dated April 10, 2009 between Campana Properties, Inc. and QSL of Sheffield, Inc. (Sheffield location).

9. Real Estate Option Agreement dated April 10, 2009 between Campana Development V, LLC and QSL of Sheffield, Inc. (Sheffield location).

10. Property Agreement dated February 23, 2010 between Quaker Steak & Lube and Travaglini Enterprises. (Sheffield location)

11. Lease Agreement dated September 27, 1999 between CAII, LLC and Ray Joll Development, Inc., as amended by that First Amendment of Lease dated June 6, 2000, as further amended by that Second Amendment to Lease dated March 14, 2002, as further amended by that Third Amendment to Lease dated June 3, 2002, and as assigned and

amended by that Assignment of Lease-Assumption of Lease-Consent to Assignment-Amendment of Lease dated June 9, 2004 by and among CAII, LLC, Ray Joll Development, Inc. and QSL of Independence Ohio, Inc. (Valley View location).

12. Lease dated December 19, 2000 between Vermilion Port Authority and Vermilion Red Clay, LLC, as amended by that Consent to Sublease and Amendment of Lease dated May 13, 2009, and as further amended and assigned by that Amendment to Lease and Consent to Assignment dated July 1, 2011 between Vermilion Port Authority and Sandusky Bay Company, Ltd. (Vermilion location).

13. Reaffirmation, Ratification, Amendment and Restatement of Sublease Agreement dated May 13, 2009 between Vermilion Red Clay, LLC and Lube Holdings, Inc. (Vermilion location).

14. Ground Lease dated June 2, 2013 between Elmhurst Properties, Inc. and QSL of Warren, Inc. (Warren location).

15. Lease Agreement dated June 9, 2008 between Ohio County Development Authority and QSL of Wheeling, Inc. (Wheeling location).